# United States District Court

WESTERN DISTRICT OF NEW YORK

In the Matter of

IN THE MATTER OF THE
APPLICATION OF THE UNITED
STATES OF AMERICA FOR A
WARRANT AUTHORIZING THE USE
AND INSTALLATION OF A TRACKING
DEVICE ON ON A GRAY 2005 TOYOTA
COROLLA BEARING NEW YORK
REGISTRATION BNV5338 WITH VIN
2T1BR32E75C462030



15-MJ-684

## APPLICATION FOR A WARRANT AUTHORIZING
## THE INSTALLATION AND MONITORING OF A GPS TRACKING DEVICE

I, CHRISTOPHER MAHAFFY., being duly sworn depose and say:

I am a Special Agent with U.S. Drug Enforcement Administration (DEA), and have reason to believe that probable cause exists for the installation and monitoring of a tracking device on

ON A GRAY 2005 TOYOTA COROLLA BEARING NEW YORK REGISTRATION BNV5338 WITH VIN 2T1BR32E75C462030

which is currently in the Western District of New York, and which is designed for use, intended for use or is being used in committing offenses in violation of 21 U.S.C. §§ 841 and 846.

The facts to support a finding of Probable Cause are as follows:

**SEE ATTACHED AFFIDAVIT**

Continued on the attached sheet and made a part hereof:   (✔) Yes   ( ) No

CHRISTOPHER MAHAFFY
Signature of Affiant

Sworn to before me and subscribed in my presence,

November 30, 2015   at   9:50 AM          at   Rochester, New York
Date                                              City and State

HON. Jonathan W. Feldman, U.S. Magistrate Judge
Name & Title of Judicial Officer                  Signature of Judicial Officer

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

IN THE MATTER OF THE             :
APPLICATION OF THE UNITED        :
STATES OF AMERICA FOR A          :
WARRANT AUTHORIZING THE USE      :         15-MJ-684
AND INSTALLATION OF A TRACKING   :
DEVICE ON A GRAY 2005 TOYOTA     :
COROLLA BEARING NEW YORK         :
REGISTRATION BNV5338 WITH VIN    :
2T1BR32E75C462030                :


## AFFIDAVIT IN SUPPORT OF MOTION FOR GPS TRACKING DEVICE

Your affiant, Christopher Mahaffy, having been duly sworn, states the following:

1.    I am a Special Agent with the Drug Enforcement Administration (DEA), and as such I am an "investigative or law enforcement officer" of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 21, United States Code, Section 801, et seq. And Title 18, United States Code, Section 2516(1).

2.    I have been employed with the Drug Enforcement Administration (DEA) since May 4, 2014. I am currently assigned to the DEA Rochester Resident Office. Prior to being a Special Agent with the Drug Enforcement Administration, I received a Bachelor's of Arts in Public Justice from the State University of New York at Oswego in May 2007. I completed 18 weeks of training at the DEA Office of Training, located in Quantico, Virginia prior to being

1

assigned to the Rochester Resident Office. My training included classroom preparation in drug trafficking networks, drug identification, as well as practical application of surveillance, drug investigation, and arrest procedure. I am familiar with the methods of use, effects, distribution, appearance, as well as the methods of manufacture of controlled substances. I have experience in the investigation of violations of federal and state narcotics laws. During my time at the Rochester Resident Office, I have participated in investigations involving drug trafficking and organized crime matters, including two long-term narcotics investigations that utilized the court-authorized interception of wire communications that have resulted in the arrest of drug distributors, and the seizures of quantities of controlled substances. In addition, I have had the opportunity to work with other DEA agents and law enforcement officers, who have also investigated drug trafficking networks.

3. I am presently investigating the activities of Chayanne RIVERA for possible violations of Title 21, United States Code, Sections 841(a)(1) (possession with intent to distribute, and distribution, of a controlled substance) and 846 (conspiracy to possess with intent to distribute, and to distribute, a controlled substance). I submit this affidavit in support of an application for a warrant authorizing the installation and use of a mobile tracking device on the automobile currently being used by Chayanne RIVERA, that is, a gray 2005 Toyota Corolla, bearing New York registration BNV-5338 and VIN 2T1BR32E75C462030, registered to Salvador Casiano at 245 Colwick Road, Rochester, New York 14624 and utilized by Chayanne RIVERA (hereinafter SUBJECT VEHICLE).

4. Probable cause exists to believe, and I do believe, as more fully set forth herein,

that the installation and use of a mobile tracking device in or on the SUBJECT VEHICLE will lead to evidence of the above referenced crimes as well as the identification of individuals who are engaged in the commission of those and related crimes. The purpose of this affidavit is solely to establish probable cause for the installation, tracking, and monitoring of a mobile tracking device and therefore not all aspects of this investigation are contained herein. I have participated in the investigation that is the subject of this affidavit in conjunction with other law enforcement officers. As a result of this participation, as well as information provided by other law enforcement officers, I am fully familiar with the facts set forth herein.

## INVESTIGATION BACKGROUND

5. On July 29, 2015, the Honorable Jonathan W. Feldman, United States Magistrate Judge, issued a warrant authorizing the installation and use of a GPS tracking device for a period of 45 days on a 2015 Dodge Challenger, bearing Virginia registration VHB-2879 and VIN 2C3CDZAG9FH850140, rented in the name of and utilized by Blake RIVERA, the brother of Chayanne RIVERA

6. On August 26, 2015, the Honorable Marian W. Payson, United States Magistrate Judge, issued a warrant authorizing the installation and use of a GPS tracking device for a period of 45 days on a 2015 GMC Yukon, bearing Maryland registration 5BR-1811 and VIN 1GKS2HKC2FR265780, rented in the name of and utilized by Blake RIVERA (Blake Rivera had switched rental cars by returning the Dodge Challenger and renting the GMC Yukon).

7.      On October 1, 2015, the Honorable Marian W. Payson, United States Magistrate Judge, issued a warrant authorizing the installation and use of a GPS tracking device for a period of 45 days on a 2015 GMC Acadia, bearing New York registration GZR-1144 and VIN 1GKKVRKD1GJ113205, rented in the name of and utilized by Blake RIVERA.

8.      On November 13, 2015, the Honorable Jonathan W. Feldman, United States Magistrate Judge, issued a warrant extending the use of a GPS tracking device for a period of 45 days on the 2015 GMC Acadia, being New York registration GZR-1144 and VIN 1GKKVRKD1GJ113205, rented in the name of and utilized by Blake RIVERA.

9.      In early October 2015, Rochester Police Investigator Timothy Pearce and DEA Special Agent Sabatino Smith met with CS-2 to formulate a plan to purchase cocaine from Blake RIVERA at 164 Curtis Street, Rochester, New York (hereinafter the Curtis Street residence). CS-2 had previously purchased cocaine from Blake RIVERA at the Curtis Street residence. On this day, CS-2 telephonically contacted Blake RIVERA. In sum and substance, Blake RIVERA instructed CS-2 to meet RIVERA's brother at the Curtis Street residence and that Blake RIVERA would instruct his brother to conduct the negotiated cocaine transaction. Surveillance was established in the area of the Curtis Street residence. Inv. Pearce and SA Smith searched CS-2 and his/her vehicle with negative results for contraband, equipped him/her with a kel/recorder, and provided him/her with Official Advanced Funds (hereinafter OAF) for the purchase of the cocaine. Agents provided constant surveillance as CS-2 traveled to 164 Curtis Street, Rochester, New York and went inside the residence. Information received from the CS-2 revealed that he/she met a Hispanic male that identified himself as

"Shilo" inside the Curtis Street residence. CS-2 described "Shilo" as a Hispanic male in his 20s with a tightly trimmed beard. CS-2 then stated that "Shilo" went upstairs and when he returned downstairs he handed CS-2 a white powdery substance in a plastic bag. CS-2 then handed "Shilo" the OAF, which "Shilo" counted in front of CS-2. "Shilo" then gave CS-2 his phone number 585-483-6662 and instructed CS-2 that he/she could contact him in the future. CS-2 further stated that he/she saw a pistol grip shotgun in the kitchen at the time of this drug transaction. SA Smith then observed CS-2 depart the Curtis Street residence. Agents provided constant surveillance as CS-2 returned to a neutral location and provided Inv. Pearce and SA Smith with the kel/recorder and the bag of white powdery substance obtained from "Shilo", which was later determined to field test positive as cocaine. Inv. Pearce and SA Smith again searched CS-2 and his/her vehicle with negative results for contraband.

10.  Later in October 2015, Inv. Pearce and SA Smith again met with CS-2. Inv. Pearce and SA Smith displayed to CS-2 an identification card depicting six males with similar characteristics. CS-2 was told by SA Smith that it was not necessary to recognize anyone in the photo array but if he/she did recognize anyone to advise SA Smith. After CS-2 viewed the photo array he/she stated that the male depicted in photo number "3" was Shilo. SA Smith asked CS-2 if that was the individual who identified himself as Shilo and who sold CS-2 the cocaine at the Curtis Street residence during the transaction depicted above in PARAGRAPH 9 and CS-2 stated "yes". Agents have confirmed that the person depicted in Photo #3 is Chayanne N. RIVERA DOB 09/23/90, Blake RIVERA's brother

11.  In the middle of November 2015, Inv. Pearce and SA Smith again met with CS-2

5

to formulate a plan to purchase cocaine from Chayanne RIVERA at the Curtis Street residence. Surveillance was established in the vicinity of the Curtis Street residence and 245 Colwick Road, Rochester, New York (hereinafter the Colwick Road residence). CS-2 attempted to telephonically contact Chayanne RIVERA at the phone number of 585-483-6662 provided by Chayanne RIVERA to CS-2 in early October 2015 but received an automated message stating that the phone was unable to accept phone calls at that time. Shortly after CS-2 attempted to contact Chayanne RIVERA, SA Jeffrey Plattos observed the SUBJECT VEHICLE pull into the driveway of 245 Colwick Road, Rochester, New York and a Hispanic male matching the description of Chayanne RIVERA enter the Colwick Road residence from the vehicle with a dog. A DMV records check revealed that the SUBJECT VEHICLE is registered to Salvador Casiano, DOB 11-27-1961, of 245 Colwick Road, Rochester, New York. Based on additional investigation, Casiano is believed to be the father of Chayanne RIVERA's wife, Kaila M. Rivera.

12.     Inv. Pearce and SA Smith searched CS-2 and his/her vehicle with negative results for contraband, equipped him/her with a kel/recorder, and instructed him/her to travel to the Curtis Street residence in order to speak with Victor RIVERA, Chayanne's father and a co-conspirator of the drug trafficking organization. Upon CS-2's arrival at the Curtis Street residence, SA James Schmitz observed CS-2 enter the residence. In sum and substance, information received from CS-2 revealed that Victor RIVERA answered the door and let him/her into the residence. CS-2 stated that he/she told Victor RIVERA that he/she tried to contact Chayanne RIVERA but his phone was turned off. Victor then stated to CS-2 that he

would contact his son directly. Victor RIVERA telephonically contacted Chayanne RIVERA and told him that CS-2 was trying to meet with him. Chayanne RIVERA stated that he had to put minutes on his phone and would meet with CS-2 at the Curtis Street residence in approximately 45 minutes.

13. CS-2 departed the Curtis Street residence as observed by surveillance units. Constant surveillance was conducted as CS-2 returned to a neutral location with Inv. Pearce and SA Smith. Inv. Pearce and SA Smith again searched CS-2 and his/her vehicle with negative results for contraband. Approximately 45 minutes after CS-2's visit to the Curtis Street residence, SA Plattos observed Chayanne RIVERA depart the Colwick Road residence in the SUBJECT VEHICLE. Surveillance units followed the SUBJECT VEHICLE to a Valero Gas Station on Lyell Avenue, Rochester, New York that had a display outside advertising the sale of prepaid phone services. SA Christopher Mahaffy observed Chayanne RIVERA enter the gas station and then depart the store approximately three minutes later and return to the driver's side of SUBJECT VEHICLE. It was also confirmed at this time that Chayanne RIVERA was the sole occupant of the SUBJECT VEHICLE. Surveillance continued as the SUBJECT VEHICLE traveled directly to the Curtis Street residence. Shortly afterward, CS-2 received a phone call from Chayanne RIVERA, as CS-2 was in the presence of Inv. Pearce and SA Smith. In sum and substance, Chayanne RIVERA confirmed that he had arrived at the Curtis Street residence and that CS-2 could travel to that location to conduct the cocaine transaction. Inv. Pearce and SA Smith again searched CS-2 and his/her vehicle with negative results for contraband, equipped him/her with a kel/recorder, and provided CS-2 with OAF for the

7

purchase of cocaine. Constant surveillance was conducted as CS-2 traveled to the Curtis Street residence and SA Schmitz observed CS-2 approach the residence after parking his/her vehicle. Information received from CS-2 revealed that Chayanne RIVERA opened the door to the residence and CS-2 entered. Chayanne RIVERA then went upstairs and when he came back downstairs he handed CS-2 a plastic bag containing a white powdery substance. CS-2 then counted and provided Chayanne RIVERA with the OAF before departing the Curtis Street residence. SA Schmitz then observed CS-2 depart the vicinity of the Curtis Street residence. Agents provided constant surveillance as CS-2 returned to a neutral location and provided Inv. Pearce and SA Smith with the kel/recorder and the bag of white powdery substance obtained from Chayanne RIVERA, which was later determined to field test positive as cocaine. Inv. Pearce and SA Smith again searched CS-2 and his/her vehicle with negative results for contraband.

14. Based on the foregoing and on my involvement in this investigation, I believe that installing and monitoring a GPS tracker on the SUBJECT VEHICLE will provide additional insight as to the operations of Blake Rivera's drug trafficking organization, including but not necessarily limited to identifying stash locations where drugs or drug proceeds are concealed as well as the identity of drug suppliers and other drug customers of Blake Rivera's organization.

15. The use of GPS tracking devices has already proven to be imperative in the continued investigation of the RIVERA Drug Trafficking Organization. Without the use of a GPS tracking device agents would most likely be spotted by Chayanne RIVERA or his associates and compromise the investigation. As agents learn Chayanne RIVERA's methods of

8

operation for his drug trafficking operation it is crucial to this investigation for agents to continue to utilize the GPS tracking device to further gain information on when and how he is being supplied cocaine. As well as, identifying additional co-conspirators and stash locations that Chayanne RIVERA utilizes.

## USE OF GPS TRACKING DEVICE

16. The goal of this investigation is not limited to arresting Blake RIVERA, Victor RIVERA, and Chayanne RIVERA (hereinafter the RIVERA DTO) and charging them with the sales of cocaine to a Confidential Source. The goals also include identifying the locations where the RIVERA DTO stashes drugs and money and identifying the RIVERA DTO's sources, workers and customers. While monitoring of the GPS tracking device on the 2015 GMC Acadia between October 2, 2015, and November 13, 2015, has given agents information on where Blake RIVERA may be receiving cocaine shipments and where the RIVERA DTO may be storing narcotics and/or currency, it did not produce much if any evidence relating to the identities or exact locations of its suppliers. It is anticipated that, in the event the investigative team can monitor the requested GPS tracking device on the SUBJECT VEHICLE for a 45 day period, it will lead to evidence identifying additional supplier(s) and the location(s) where the RIVERA DTO's supplier(s) operates. The use of the additional GPS tracking device on the SUBJECT VEHICLE may also disclose additional supplier(s) and location(s) that are exclusive to Chayanne RIVERA and not observed through the monitoring of the GPS tracking device on

Blake RIVERA's vehicle. Based on my experience in this case and my training, I believe that it will be extremely difficult to establish and maintain surveillance on Chayanne RIVERA as he travels in and around Rochester and outlying areas, without the installation of a GPS tracking device in the SUBJECT VEHICLE. Without the installation of a GPS device, surveillance of Chayanne RIVERA would require investigators to physically follow him as he drives around the city and out of the city. This increases the likelihood that Chayanne RIVERA and/or his associates will detect the police surveillance, thereby damaging the investigation by Chayanne RIVERA and his associates switching vehicles, changing addresses and phone numbers, concealing or moving to new locations their drugs and drug proceeds and even leaving the area for a period of time.

17. Therefore, your affiant requests authorization to continue to monitor a GPS mobile tracking device on the SUBJECT VEHICLE. Use of a mobile tracking device will allow the investigating agents to monitor the locations to which the SUBJECT VEHICLE is driven without having to remain in close sight surveillance, which will greatly reduce the risk that the investigation would be compromised. As noted above, your affiant believes that monitoring the mobile tracking device will lead to evidence of the aforementioned offenses, as well as to the identification of other individuals who are engaged in the commission of these offenses and related crimes.

18. Your affiant requests authorization to install a GPS mobile tracking device on the SUBJECT VEHICLE while it is in the Western District of New York. Because Chayanne RIVERA usually parks the SUBJECT VEHICLE in his driveway at his residence, it may be

necessary to enter onto private property in order to effect the installation and removal of the mobile tracking device on the SUBJECT VEHICLE. To ensure the safety of the executing officers and to avoid premature disclosure of this ongoing and covert investigation, it is requested that the Court authorize installation and removal of the tracking device at any time in the day or night. I believe that if Chayanne RIVERA were to learn of the tracking device or efforts by the investigative team to install the device, it would alert him and any co-conspirators to the existence of this ongoing, covert investigation. I further believe that if Chayanne RIVERA was alerted to the existence of this investigation, he and/or any co-conspirators may become more secretive in their criminal activities, conduct their criminal activities at different locations, harm suspected government agents and/or informants, threaten potential witnesses, flee the jurisdiction, conceal or destroy evidence, and otherwise seriously jeopardize this ongoing criminal investigation.

19. In the event that the Court grants this application, investigators will monitor the mobile tracking device during both daytime and nighttime hours for a period of 45 days following the installation of the device. The tracking device may produce signals from inside private garages or other such locations not open to public view or visual surveillance.

20. Given the contents of this Affidavit and the ongoing nature of the investigation described herein, I respectfully request that the Court order that this affidavit, the application and the warrant be and remain sealed for a period of 45 days after the use of the tracking device has ended or until such time as the Court orders. In accordance with Title 18, United States Code, Section 3103a (b), and Federal Rule of Criminal Procedure 41(f) (3), I further request that

the order granting this application delay notification of the execution of the order for a period not to exceed 45 days after the use of the mobile tracking device has ended because there is reasonable cause to believe that providing immediate notification would seriously jeopardize an ongoing investigation. As demonstrated above, there is probable cause to believe that Chayanne RIVERA is engaged in continued criminal activity. Were he to learn of the existence of the requested Order or to learn of the installation of the mobile tracking device, it would disclose to him that he is under investigation by law enforcement officers. Based on my training and experience, I believe that this would cause Chayanne RIVERA to destroy evidence, such as narcotics, drug ledgers or the proceeds of narcotics transactions, and/or flee the jurisdiction and otherwise seriously jeopardize the ongoing criminal investigation. Notice therefore should be delayed so as to avoid seriously jeopardizing the ongoing criminal investigation involving Chayanne RIVERA.

WHEREFORE, I respectfully request that the Court issue a warrant authorizing members of the DEA or their authorized representatives, including but not limited to, Rochester Police Department officers, other law enforcement agents, and technicians assisting in the above-described investigation, to install a GPS mobile tracking device in or on the SUBJECT VEHICLE within the Western District of New York within 10 calendar days of the issuance of the requested warrant, and to remove said mobile tracking device from the SUBJECT VEHICLE after the use and monitoring of the tracking device has ended (to enter onto private property for the purpose of installing, maintaining, repairing, and/or removing the tracking device; and to monitor the signals from that tracking device, for a period of 45 days following

the issuance of the warrant, including signals produced when the SUBJECT VEHICLE is inside private garages and other locations not open to the public view or visual surveillance, and when the SUBJECT VEHICLE is within or outside the Western District of New York, but within the United States.

Respectfully submitted,

CHRISTOPHER MAHAFFY
DEA Special Agent

Sworn to and subscribed before me on this the 30 day of November, 2015.

HONORABLE JONATHAN W. FELDMAN
United States Magistrate Judge